# FEDERAL DEFENDER SERVICES OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Guy Cardamone, Madison Supervisor
Elizabeth Blair
John W. Campion
Alexandra Douglas
Ramuel R. Figueroa
Matthew Giesfeldt
Jonathan Greenberg
Gabriela A. Leija
Julie K. Linnen
Dennise Moreno
Tom Phillip
Joshua D. Uller
Alex Vlisides

411 East Wisconsin Avenue
Suite 2310
Milwaukee, Wisconsin 53202

Telephone 414-221-9900
Facsimile 414-221-9901

February 21, 2025

Honorable Brett H. Ludwig
United States District Court
517 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-4500

RE: *United States v. Jabari Griffin*
    Case No. 24-cr-78

Dear Judge Ludwig,

Last year, Jabari Griffin was a passenger in a stolen car. His acquaintance, James Poole, was driving the car, which had three other passengers. The group was up to no good. Both Poole and Griffin had guns. One of the passengers reported that they had been looking for cars to steal when Poole pulled into a parking lot in downtown Milwaukee, got out of the car, approached an Infiniti that a man had just entered, pointed a gun at the driver, and committed a carjacking. Stunned, Jabari Griffin hopped into the empty driver's seat, and drove away. Poole followed him in the carjacked Infiniti. Jabari and the other passengers abandoned the car Griffin had driven away from the carjacking scene and got into the Infiniti. A few minutes later, police saw the Infiniti and tried to stop it. Poole fled from the police and crashed into a tree, seriously injuring all its occupants.

Jabari has pled guilty for his role in the offense, and on February 27, the Court will sentence him. He submits this memorandum in support of his sentencing. He asks that the Court impose a total sentence of 60 months, acknowledging that the 60-month

sentence will be consecutive to the nearly 7-month revocation sentence, producing a total sentence of approximately 67 months.

## *Jabari Griffin's History & Characteristics*

By his account, Jabari had a relatively normal childhood. Though his parents were never married, both were around and involved in Jabari's life.[1] He played sports, went to school, and had wonderful relationships with his family, particularly with his grandmother (below left, with Jabari and his brothers) and mom's brother, Quinton McGee (below right, with Jabari and his brothers).

 

As Jabari entered his adolescence, however, he began to face some adversity. When Jabari was approximately 12, his father was sent to prison for six years. Jabari really struggled after his father's incarceration. He lost interest in school. As his mother puts it, Jabari started to rebel against his mom and her rules. He started hanging out with the wrong crowd. Soon he was running away from home. Quentin, who Jabari viewed "like a father" was the only person who seemed to be able to connect with Jabari. But even he struggled to get Jabari on the right track.

---

[1] The PSR mistakenly states that Jabari never met his father. *See* ¶ 66.

Jabari ended up dropping out of school. He started smoking pot. He was heading in the wrong direction. Fast. And in May 2021, at just 17 years old, Jabari was arrested as a passenger in a stolen car. A couple weeks later, he was arrested again, under similar circumstances. Jabari was now floundering. He was at a crossroads. And that's when his uncle Quentin was murdered. By his mom's account, Jabari spiraled after Quentin's death. He remained in the streets. He was again arrested as a passenger in a stolen car.

It wasn't all bad. At 18, Jabari became a father. Though he was ill-equipped for the responsibilities of parenthood, he embraced them and took his role as a provider seriously. He went on to have two more children, pictured below.




Despite his youth and the fact that he dropped out of school, Jabari does have a good employment history, reflecting a strong work ethic. The first word he used to describe himself was hardworking. This is important, as Jabari has some hard work ahead of him. He also went back to school and got his GED, making the most of his current incarceration and taking the important early steps towards getting his life back on the right track.

The second word Jabari used to describe himself is family oriented. He has rebuilt his relationship with his mother. He has fully embraced his responsibilities as a father. And though it pains him that he's not with his children now, and laments the cyclical nature of incarcerated parents, he is highly motivated to leave the street lifestyle that he was living behind. He knows his children need him and he is determined to be there for them in the ways that his father was not for him.




*Nature & Circumstances of Offense*

Jabari does not seek to minimize the offense. It was a serious crime. And he undoubtedly played a part in it. The frustrating part is that Jabari never should have been in that car in the first place. He had no business driving around in a stolen car with a gun while he was on probation for riding around in a stolen car. He was up to no good, and even if he didn't plan on or seek to commit a carjacking, he wasn't exactly avoiding negative associations. And when Poole got out and committed the carjacking—on his own—Jabari could have disassociated himself from afterwards. He didn't. Instead, he got into the Infiniti, and there is a steep price to pay for that. The mandatory minimum sentence he faces here reflects that.

At the same time, Jabari's role in the offense is a mitigating factor that warrants leniency. He didn't plan the carjacking and he didn't actively commit it. He didn't select the victim.

Hon. Brett H. Ludwig
February 21, 2025
Page 5

He didn't point two guns at the victim and steal his car. And he didn't flee from the police and put the lives of so many at risk. That takes his case well outside the heartland of robbery cases that come before this Court.

*The Sentencing Guidelines*

The sentencing guidelines in this case call for a sentence of 101-111 months. That includes the 60-month sentence on Count Two and a range of 41–51 months on Count One. As the Court knows, it is free to consider the substantial mandatory sentence on Count Two when determining what ought to be an appropriate total sentence. *Dean v. United States*, 581 U.S. 62 (2017).

The best way to do that here is by calculating the guidelines absent the § 924(c) charge. Despite their flaws, the guidelines do account for whether, and to what degree, a firearm was used in the commission of a robbery. When, as here, it's brandished, it yields a five-level increase. So, were the Court to consider Jabari's guidelines without a § 924(c) charge, but with a five-level enhancement for brandishing a firearm during a robbery, his total offense level would be 25, and his guidelines would be 70-87 months. That is essentially the range that the parties are requesting.

But there are two principal reasons why even that guideline range would be overstated here. The first and most salient, as discussed above, is that it doesn't account Jabari's role in the offense. Were the roles reversed, and Jabari was the gunman and Poole the driver of the left-behind vehicle, Jabari's range would be the same as it is now. That just doesn't seem right, and it supports the notion that the guidelines don't account for Jabari's relative culpability.

Jabari's conduct is more akin to being an accessory after the fact of a robbery. Given that, it's a helpful exercise to consider the guidelines for being an accessory after the fact. Under U.S.S.G. § 2X3.1, Jabari's offense level would be six levels lower than the underlying offense, which would be 19 here. That would produce a guideline range of 37-46 months. Similarly, a minor role reduction, which would also be appropriate would reduce the guidelines range anywhere from two to four levels.

Second, the guidelines don't account for Jabari's youth. He is just 21. He was barely 20 at the time of the offense. And his priors, which lead to his 5 criminal history points, are all the product of youthful offenses—both in terms of Jabari's actual age at the time of the

offenses and in the immature nature of the conduct underlying them.[2] As the Court knows, last year's amendments to the Sentencing Guidelines included an amendment relating to the impact of an individual's youth at the time of both the instant federal offense and prior offenses that score towards their criminal history. In short, the Commission invited courts to depart downwards due to the defendant's youthfulness (i.e., before or into the individual's mid-twenties) at the time of the instant offense or prior offenses.

The Commission made this change to reflect "the evolving science and data surrounding youthful individuals, including recognition of the age-crime curve and that cognitive changes lasting into the mid-20s affect individual behavior and culpability." United States Sentencing Commission, *Amendments to the Sentencing Guidelines* (April 30, 2024) at 25. Considering Jabari's young age, and the fact that his brain is still not fully developed, his case is tailor made for application of this new policy statement.

In short, there would be ample support for a sentence below the 70–87-month range that would exist but for the § 924(c).

*Remaining Sentencing Considerations*

Despite his prior arrests, this is the first meaningful period of time (i.e., more than a few days) Jabari has ever spent in custody. And it's been jarringly eye opening. He's been away from his family and kids for the first time. "Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend." *United States v. Qualls*, 373 F.Supp.2d 873, 877 (E.D. Wis. 2005).

Finally, the parties agree that the sentence on Count One should run fully concurrent to Jabari's revocation. That's appropriate in this case because the offense conduct formed the basis of Jabari's revocation. Additionally, the mandatory consecutive 60-month sentence on Count Two ensures a substantial incremental punishment above and beyond that revocation.

---

[2] See e.g., Jeff Anderson & Rick Linden, Why Steal Cars, A study of young offenders involved in auto theft Canadian Journal of Criminology and Criminal Justice, Volume 56, Number 2 (Jan. 2014); *available at*: https://utppublishing.com/doi/10.3138/cjccj.2014.ES06/

Hon. Brett H. Ludwig
February 21, 2025
Page 7

*<u>Conclusion</u>*

For the reasons set forth herein, Jabari Griffin respectfully asks that the Court impose a sentence of 60 months on Count Two. It further asks that the sentence on Count One be the 7 months that Jabari spent in state custody. That yields a total sentence of 67 months.

Sincerely,

<u>/s/ Joshua D. Uller</u>
Joshua D. Uller